**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JACQUELYN O. CLEMENTS,

       Plaintiff,

v.                                     No. 1:22-cv-00062 RB/SCY

ALTO TRUST CO. and ALTO
SOLUTIONS, INC. (d/b/a/ ALTOIRA),

       Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

    This matter is before the Court on a variety of motions and objections that Plaintiff Jacquelyn Clements (Clements) recently filed: (1) Expedited Motion to Compel Defendants to Provide Opt-Out Period Custodian Account Agreement, Terms of Service, and Form 5305-A, Motion for Clarification, and Motion to Extend [Her] Deadline to Refile Complaint (Doc. 31); (2) Motion for Attorney Fees Under 28 U.S.C. § 1927 and the Court's Inherent Powers (Doc. 38); (3) Objections to United States Magistrate Judge Steven Yarbrough's October 14, 2022 Order Denying Motion to Strike (Docs. 42; 50); (4) Motion to Withdraw Motion for Attorney Fees (Doc. 51); (5) Application for Temporary Restraining Order and Preliminary Injunction (Doc. 52); and (6) Motion for Sanctions and Motion to Disqualify Counsel (Doc. 53).[1] Clements is represented by her son, attorney Bradford Clements (Bradford Clements). At the heart of these recent grievances is Bradford Clements's deep dissatisfaction with defense counsel.

**I.    Background**

    This lawsuit primarily involves the enforceability of an arbitration clause contained within

---

[1] Clements asks "the Court [to] promptly set her" motions for sanctions and injunctive relief "for a live-testimony hearing on the merits and [to] allow targeted, expedited discovery in advance of the hearing under Federal Rule of Civil Procedure 26(d)." (Doc. 52 at 19 (emphasis omitted).) The Court finds it can decide Clements's motions without a hearing or discovery and will deny these requests.

the Custodian Account Agreement (CAA) that Clements agreed to when she opened a Traditional Individual Retirement Custodial Account (the Lending Club IRA) with Defendants. (*See* Doc. 18 (FAC).) Clements became dissatisfied with Defendants' management of the Lending Club IRA and demanded arbitration, but she later declared that "all issues of the Arbitration Provision's validity, arbitrability, and enforceability 'should be decided by independent court review.'" (Doc. 30 (quoting FAC at 15 ¶ 49).) Clements, who is represented by her son, Bradford Clements (*see* Doc. 42 at 1 (citing Docs. 1 at 36; 39-2)), filed suit in this Court on January 27, 2022, and filed a First Amended Complaint on February 9, 2022. (Docs. 1; 18.) Defendants moved to dismiss. (Docs. 8; 13.) Clements then moved to file a second amended complaint. (*See* Doc. 23.)

The Court found that Clements's complaints do not comply with Federal Rule of Civil Procedure 8(a). (*See* Doc. 30 at 7–9.) The Court thus denied Defendants' motions to dismiss without prejudice, granted in part Clements's motion for leave to file a Second Amended Complaint, and directed Clements to state her claims in a "simple, concise, and direct" manner in a Third Amended Complaint. (*Id.* at 8.) The Court advised Clements to "take care to make this her final amendment." (*Id.* at 9.)

Since that time, Clements has filed a flurry of motions, the majority of which are entirely unrelated to the issue in her original complaint—the enforceability of the parties' arbitration clause. The Court will examine each motion in turn now.

## II. The Court denies Clements's motion to compel early discovery.

Clements makes two requests in the first motion under consideration. First, she seeks clarification of the Court's statement in its September 15, 2022 Opinion directing Clements to "take care to make this her final amend[ed complaint]." (*See* Docs. 30 at 9; 31 at 10–11.) Second, she moves to compel documents related to different versions of the parties' CAA. (*See* Doc. 31.)

She asserts that "three different versions of the CAA were used during" an opt-out period that occurred when the Lending Club IRA "attempted to switch the custodian and administrator for [Clements's] IRA from Forge Trust Entities to Defendants Alto Trust Co. (custodian) and AltoIRA (administrator)." (*See id.* at 1–2.) She asserts that she has some, but not all, of the documents, and she seeks an order compelling Defendants to provide the documents that she does not have. (*See id.* at 2–3, 10.)

Defendants oppose the motion on at least three bases and assert that relevant documents were "provided . . . long ago" and that other documents are immaterial to her claims. (Doc. 33 at 2, 5.) They further argue that "Clements admits in her motion that the revised August 25, 2022 arbitration provisions 'address virtually all of the numerous legal deficiencies that Plaintiff has presented in this litigation.'" (*Id.* at 6 (internal alterations omitted).) "If that is so, Alto will agree to apply the August 25, 2022, arbitration terms to the pending AAA arbitration action, which should make Clements's action in this Court moot." (*Id.*) Finally, they argue that Clements does not need to plead "evidentiary detail" in the complaint. (*Id.* at 7–8.)

In reply, Clements "urges the Court to first rule on" her request to clarify. (Doc. 48 at 1.) "Should the Court clarify that its statement in the September 15, 2022 order was intended to mean that [Clements] should make the upcoming Third Amended Complaint her final amendment prior to resolution of a motion to dismiss and entry of a scheduling order allowing for discovery, then there is no need for the Court to consider [her] Expedited Motion to Compel and [she] withdraws it." (*Id.* at 2 (emphasis omitted).) She does not make further argument in support of her request for early discovery and does not respond to Defendant's offer to apply the August 25, 2022, arbitration terms to the pending arbitration action. (*See id.*)

The Court's instructions to Clements regarding future amendments were to inform her that

she should not make her complaint a moving target. The Court agrees that Clements "should make the upcoming Third Amended Complaint her final amendment prior to resolution of a motion to dismiss and entry of a scheduling order allowing for discovery . . . ." (*See* Doc. 48 at 2 (emphasis omitted).) The Court will apply Federal Rule of Civil Procedure 15 to any future requests to amend the complaint in the event that, after entry of a scheduling order, Clements discovers new facts during discovery that she believes justify further amendment. The Court therefore **grants** the request for clarification in this respect and **denies** the motion to compel early discovery. Clements shall file her Third Amended Complaint **21** days from entry of this Order.

### III.   The Court overrules Clements's objections to the Magistrate Judge's order.

Clements moved to strike the phrase "inactive attorney" from Defendants' brief filed in response to her motion to compel, or alternatively, to strike the brief in its entirety. (Doc. 34.) Judge Yarbrough denied the motion and summarized the dispute as follows:

> [Clements] filed the present Motion To Strike . . . , arguing that [Bradford Clements] is "active" in the state of Texas, but "non-practicing." Texas rules permit active but non-practicing attorneys to represent immediate family members, such as an attorney's mother. [Bradford Clements] argues that Defendants' accusation is harmful and disparaging to him.
>
> Defendants, in their response to Plaintiff's motion to strike, argue that the Court's local rules require Plaintiff's counsel to be actively *practicing* law in a state. However, the local rules quoted by Defendants only refer to "active status," not the active "practice" of law. D.N.M.LR-Civ. 83.2(f)(1) (a member of the bar of this Court must "remain a licensed member in active status and in good standing of the bar of at least one state . . . ."). Defendants acknowledge that "[t]he State Bar of Texas states that someone may apply for a 'non-practicing exemption' if they have **active status** 'but have not engaged in the practice of law in Texas at any time during their MCLE compliance year.'" Defendants do not contest that Texas permits a "non-practicing" attorney to nonetheless practice law on behalf of an immediate family member, or that this case fits within that exception. [Bradford Clements] has provided evidence that the State Bar of Texas considers him to be "active."

(Doc. 42 at 1–2 (citations omitted) (discussing Docs. 34 at 2–3; 34-3; 35 at 2–3).)

Judge Yarbrough denied the request to strike because Rule 12(f) provides only for striking material from a pleading, and Defendant's response to the motion to compel is not a pleading. (*See id.* at 2 (explaining that "[p]leadings are defined in Rule 7 and do not include a response to a motion to compel").) *See also Est. of Anderson v. Denny's, Inc.*, 291 F.R.D. 622, 634 (D.N.M. 2013) (noting that "[o]nly material included in a pleading may be the subject of a motion to strike"; therefore, "[m]otions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike") (quotation marks and citation omitted). What was more, Defendants had already "filed a notice of errata to correct the allegation in the response brief from 'inactive attorney' to 'inactive or non-practicing' attorney." (*Id.* (citing Doc. 36).) "By operation of the disjunctive, this is not false because Plaintiff's counsel agrees he is on 'non-practicing' status in Texas." (*Id.*) Thus, Judge Yarbrough declined to strike the material on that basis as well. (*See id.* (noting that "Rule 12(f) motions to strike are not favored, often being considered purely cosmetic or time wasters") (quotation marks and citation omitted).)

Clements filed objections to Judge Yarbrough's order on November 11, 2022. (Doc. 50.) Defendant filed a response on November 17, 2022. (Doc. 54.) This is a non-dispositive pretrial matter under Rule 72(a), which a district judge may modify or set aside if the magistrate judge's conclusions are "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a). Despite this language in the rule, Clements requests the Court review her objections de novo. (Doc. 50 at 5.) Under either standard of review, the result is the same.

Clements's objections to the magistrate judge's order are groundless. As Defendants point out (Doc. 54 at 7–8), Clements makes no argument to establish that Rule 12(f) applies to a word in a response to a motion to compel, which is not a pleading (*see* Doc. 50). And with respect to the matter of Bradford Clements's bar status, the magistrate judge actually *agreed* with Plaintiff's

counsel. (*See* Doc. 42 at 2.) The magistrate judge disagreed with Defendant's reading of the Local Rules and pointed out that the Local Rules require Plaintiff to be "active" in the bar of a state and that the Texas State Bar considers Plaintiff's counsel to be on "active" status. (*See id.* at 1–2.)

Clements argues that the magistrate judge "incorrectly" found that Plaintiff's counsel agrees he is on "non-practicing" status in Texas. (Doc. 50 at 8.) She is wrong. Clements's own motion did indeed state that Bradford Clements "is active and 'non-practicing.'" (Doc. 34 at 3; *see also* Doc. 34-7 at 1 (email from Bradford Clements to defense counsel stating, "I am non-practicing and have a CLE exemption").) In any event, Clements does not explain how this is relevant to the merits of any dispute before the Court.

Bradford Clements also requests "specific findings and conclusions" regarding his Texas Bar membership status and asks the Court to specifically analyze certain Texas code provisions. (Doc. 50 at 5–6.) Because such matters are not at issue in the current litigation, that is a request for an advisory opinion. *See Norvell v. Sangre de Cristo Dev. Co*., 519 F.2d 370, 375 (10th Cir. 1975) ("Judicial restraint should be exercised to avoid rendition of an advisory opinion.") (citation omitted). The basis for this request appears to be counsel's belief that Defendants' use of the word "inactive" in a response brief is the equivalent of a motion to disqualify Plaintiff's counsel. Clements has no authority for this proposition and the Court does not otherwise find it plausible. Defendants have not filed a motion to disqualify Bradford Clements and have disclaimed any intent to do so. (Doc. 54 at 4.) Bradford Clements also expresses concern that the Court will sua sponte disqualify him. (Doc. 50 at 2.) The Court does not intend to sua sponte disqualify Bradford Clements on the basis that he is "inactive" in the Texas State Bar. Defendants have corrected the representation that Clements's counsel is "inactive." There is no reason to continue to multiply the

proceedings on this issue, and Bradford Clements is advised to cease doing so. Clements's objections are **overruled**.

## IV.      The Court denies the motions for injunctive relief and sanctions.

Clements asserts that Defendants have wrongfully disclosed her confidential and personal identifying information (PII) on two distinct occasions and asks the Court for a TRO and preliminary injunction prohibiting them "from any further wrongful disclosures . . . ." (Doc. 52 at 1.) Specifically, Clements asserts that the "Court's TRO should require Defendants to (a) submit any potential PACER filings for Plaintiff's review and redactions before public filing, and (b) only communicate with Plaintiff's counsel via his personal email address." (Doc. 52 at 1–2.) She further seeks "a preliminary injunction requiring Defendants . . . to employ adequate confidentiality and data privacy protocols consistent with law and industry and government regulatory standards to protect [her] confidential information and PII as Defendants are obligated to do under the [parties'] Terms of Service and Privacy Policy." (*Id.* at 2.) Clements contends that "[a] live-testimony hearing preceded by targeted, expedited discovery on these wrongful-disclosure issues will be necessary to learn how Defendants allowed [her] PII and confidential information to be exposed and delineate exactly what steps Defendants . . . must take to adequately protect [her] confidential information and PII going forward." (*Id.*) Clements then outlines precisely what actions the preliminary injunction should direct from Defendants. (*Id.* at 2–3.)

Clements also seeks sanctions against and disqualification of defense counsel for their conduct in this lawsuit. (*See* Doc. 53.) The Court will deny these motions in their entirety.

### A.      Relevant Facts

Clements asserts that Defendants, contrary to the parties' CAA, have disclosed her confidential and PII without authorization on two different occasions. (*See* Doc. 52 at 4.) First and

foremost, Clements complains that in their response brief to her original motion for attorney's fees, Defendants filed documents that contained Clements's full IRA brokerage account numbers listed in multiple places. (*See* Doc. 53 at 4–5 (citing Docs. 43; 43-3–43-5).) Defendants filed the response brief on October 20, 2022, at 9:10 a.m. MDT. (*See* Notice of Electronic Filing for Doc. 43.) Hours later, Defendants' "counsel discovered (without notification from Clements or her counsel) the inadvertent non-redaction of Clements's . . . account numbers." (Doc. 56 at 2; *see also* Doc. 53 at 5.) Defense "counsel immediately notified the Clerk's office, which sealed the exhibits." (Doc. 56 at 3.) At 3:36 p.m. MDT, Defendants filed an Errata to give notice that they had "inadvertently filed . . . unredacted versions" of the exhibits and to provide redacted versions of those same exhibits. (*See* Doc. 44; *see also* Notice of Electronic Filing for Doc. 44.)

When Bradford Clements received electronic notification of the Errata on October 20, 2022, he emailed defense counsel to ask who filed the redacted documents and what actions they were taking "to redress the wrongful disclosures of [his] mother's personal and confidential financial information." (*See* Docs. 53 at 7; 53-4.) Tina Muscarella Gooch, attorney for Defendants, responded to "apologize for the inadvertent filing" and explained that "[a]s soon as [they] discovered it earlier [that] morning, [they] filed a Notice of Errata (Doc. 44) and the clerk sealed Exhibits C, D, and E filed with Doc. 43." (Doc. 53-4 (emphasis omitted).) Bradford Clements replied after close of business on October 20, 2022, and gave notice that the filed redactions were insufficient. (*See id.*) He stated: "Had you actually gone back and looked at earlier filings in this case, you'd see that" Clements herself had used the *first* four digits of the account number in the original complaint, making it possible to look at the *last* four digits in the newly redacted documents and put together the full eight-digit account number.[2] (*See id.*; *see also* Doc. 53 at 6

---

[2] Ironically, Federal Rule of Civil Procedure 5.2(a)(4) directs parties to use "the last four digits of [an individual's] financial-account number[,]" a directive that Clements admits she violated herself.

(citing Doc. 1 at 4).) Gooch replied that evening and stated that she was "happy to file another notice, redacting the complete numbers[,]" which she did at 9:15 a.m. October 21, 2022. (*See* Doc. 53-4; *see also* Notice of Electronic Filing for Doc. 45.) The first Errata is now restricted and is not publicly accessible. (*See* Docs. 44; 44-1–3.)

Clements also objects to an email that defense attorney Thomas Potter sent on August 31, 2021, before Clements filed this lawsuit. (*See* Docs. 53 at 8–9; 53-9; 56 at 5.) Potter sent the email to Bradford Clements's personal and work email addresses. (*See* Doc. 53 at 8–9.) Clements explains that this was error, as he "has always represented his mother in an individual capacity" and explicitly directed Defendants in a July 20, 2021 letter to "direct all communications regarding this matter to" him at his personal email address. (*See id.* at 9.)

In response to Clements's Motion for TRO, Defendants submit a Declaration from Sean Ashworth, VP of Compliance and Associate General Counsel for Alto Solutions, Inc. d/b/a AltoIRA. (*See* Doc. 56-2.) Ashworth asserts that Bradford Clements "contacted Alto . . . to demand that [Clements's] account number be changed due to the filing of" the unredacted exhibits and the first set of redacted exhibits. (*Id.* ¶ 1.) In response, "Alto immediately began to assess the extent of any security compromise on Clements's account and potential available remedial measures." (*Id.* ¶ 2.) "That same day, Alto confirmed" that "(a) There had not been any access to Clements's account from October 20-24; (b) One could not access Clements's account with merely the account number, but required her secret password as well; [and] (c) Clements had not enabled two-factor authentication on her account from its inception through October 24." (*Id.* ¶ 3.) Alto also "worked to ascertain a method of changing Clements's account number" and "implemented a process requiring escalation and manual supervisory review and approval of any distribution or money

movement from Clements's account." (*Id.* ¶¶ 3–4.)

> On October 28, Alto (through counsel) informed Clements's counsel . . . :
> (a) That one could not access Clements's account with the account number alone, but also would require her secret password;
> (b) That Clements should (i) change her password and (ii) enable two-factor authentication on her account;
> (c) That Alto had implemented [a] program requiring escalation and manual VP-level supervisory review and approval for any distributions or transfers from her account; and
> (d) That Alto could create a new account number and transfer her assets to it, but it would require her to furnish a new, unique email for the new account number.

(*Id.* ¶ 5.) Ashworth affirms that Clements changed her password on October 28 and enabled two-factor authentication on October 29. (*Id.* ¶ 6.) Clements has not provided Alto with a new email address as required to obtain a new account number, despite follow-up regarding this step from defense counsel. (*See id.* ¶¶ 8–9.) Ashworth asserts that "[s]ince August 31, 2021, all activity on Ms. Clements's account [has] been from the IP address historically associated with her account." (*Id.* ¶ 11.)

Despite these remedial measures, Clements filed her motion for injunctive relief on November 14, 2022. (*See* Doc. 52.) Defendants filed a response brief on November 23, 2022. (Doc. 56.) Clements moved to withdraw her original motion for attorney fees (Doc. 51) and filed a new Motion for Sanctions and to Disqualify Counsel on November 14, 2022. (Doc. 53.)

### C.      The Court denies the requested injunctive relief.

Clements seeks a TRO that would require Defendants to allow her attorney to review and redact their proposed filings and to communicate with her attorney via his personal email address. (*See* Doc. 52 at 2.) She seeks a preliminary injunction that, primarily, would require Defendants to use privacy protocols sufficient to protect her PII. (*See id.*) Because Clements has not established a likelihood of success on the merits of her claim or an unequivocal right to relief from immediate

irreparable injury, the Court finds that her motion will be denied.

### 1.    Legal Standard

"The requirements for a TRO issuance are essentially the same as those for a preliminary injunction order." *People's Tr. Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1138 (D.N.M. 2018) (citations omitted). "The primary differences between a TRO and a preliminary injunction are that a TRO may issue without notice to the opposing party and that TROs are limited in duration." *Id.* (citing Fed. R. Civ. P. 65(b)). "In both cases, however, injunctive relief is an 'extraordinary remedy,' and the movant must demonstrate a 'clear and unequivocal right' to have a request granted." *Id.* (citations omitted).

"To establish its right to preliminary relief under rule 65(b), a moving party must demonstrate that 'immediate and irreparable injury, loss, or damage will result' unless a court issues the order." *Id.* (quoting Fed. R. Civ. P. 65(b)). Thus, Clements must establish: "(1) a likelihood of success on the merits; (2) a likelihood that [she] will suffer irreparable harm if the injunction is not granted; (3) the balance of equities is in [her] favor; and (4) the preliminary injunction is in the public interest." *See Republican Party of N.M. v. King*, 741 F.3d 1089, 1092 (10th Cir. 2013) (citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)); Fed. R. Civ. P. 65. "The likelihood-of-success and irreparable-harm factors are 'the most critical' in the analysis. *Legacy Church, Inc. v. Kunkel*, 455 F. Supp. 3d 1100, 1132 (D.N.M. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). "It is insufficient, moreover, that a moving party demonstrate that there is only a 'possibility' of either success on the merits or irreparable harm." *Id.* (quoting *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276 (10th Cir. 2016)).

"[T]he limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held . . . ." *Schrier v. Univ. of Colo.*, 427

F.3d 1253, 1258 (10th Cir. 2005) (quotation marks and citation omitted). "A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019) (citation omitted). "[B]ecause a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 698 F.3d 1295, 1301 (10th Cir. 2012) (citations omitted).

### 2.    Likelihood of Success on the Merits

Clements asserts that Defendants' failure to redact her PII constitutes a breach of the parties' Terms of Service and Privacy Policy. (*Id.* at 12.) She plans to add a breach of contract claim to her Third Amended Complaint based on the purported breach. (*Id.* at 14.) Clements believes that "there is a substantial likelihood [she] will prevail on the merits of her claims" and cites three cases in support. (*Id.* at 14–16.) She cites two Delaware cases to show that she will be entitled to nominal damages for her breach of contract claim. (*Id.* at 15 (citing *In re P3 Health Grp. Holdings, LLC*, No. 2021-0518-JTL, 2022 WL 16548567, at *9 (Del. Ch. Oct. 31, 2022); *Ivize of Milwaukee, LLC v. Complex Litig. Support, LLC*, No. CIV.A. 3158-VCL, 2009 WL 1111179, at *12 (Del. Ch. Apr. 27, 2009)).) She cites a third Delaware case for the proposition that "Delaware courts do not apply the litigation privilege to a breach-of-contract case in which the parties narrowly agreed in advance of any litigation that they would not disclose the other's confidential information." (*Id.* (citing *Feenix Payment Sys., LLC v. Blum*, No. C.A. No. N21C-05-099 EMD CCLD, 2022 WL 215026, at *9 (Del. Super. Ct. Jan. 25, 2022)).) None of these three cases concerns the issue Clements complains about—an inadvertent failure to redact financial account numbers and a pre-litigation email sent to an incorrect email address. As a result, she fails

to meet her burden to show a likelihood of success on the merits.

Alternatively, the Court agrees with Defendants that Clements's motion should be denied because injunctive relief must "relate[] to the allegations in the operative pleading." (Doc. 56 at 7.) In *Bettis v. City of Eunice*, the court denied a motion for preliminary injunction "because it [was] premised on allegations that [were] not currently included in [the] operative complaint." No. CV 20-922 GBW/KRS, 2021 WL 678558, at *2 (D.N.M. Feb. 22, 2021). "The purpose of interim equitable relief is to protect the movant, during the pendency of the action, from being harmed or further harmed in the manner in which the movant contends [she] was or will be harmed through the illegality *alleged in the complaint*." *Id.* (quoting *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997)). "[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the *conduct asserted in the complaint*." *Id.* (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)) (citing *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010); *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015); *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010)). "Additionally, the 'likelihood of success on the merits' factor necessarily requires analyzing the claims and factual allegations asserted in the complaint." *Id.* (citation omitted). Clements has not alleged a breach of contract claim premised on the complained-of conduct. Consequently, she fails to show an entitlement to preliminary relief.

### 3.    Irreparable Harm

Even if Clements could show a likelihood of success on the merits, she fails to show immediate irreparable harm. Clements asserts that without injunctive relief that prohibits further wrongful disclosures and requires Defendants to take steps to protect her information (via "[f]our specific potential proactive measures" that Clements outlines in her brief), she will suffer

irreparable harm from future potential disclosures. (*See* Doc. 52 at 16–17.) "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quotation marks and citation omitted). "[T]he party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (quotation omitted). The feared harm of possible future disclosures Clements worries about is only speculative. *See RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) ("Purely speculative harm will not suffice, but rather, '[a] plaintiff who can show a significant risk of irreparable harm has demonstrated that the harm is not speculative' and will be held to have satisfied his burden.") (quotation omitted). To determine "whether a plaintiff has made the requisite showing," the Court examines "whether such harm is likely to occur before [it can] rule[] on the merits." *Id.* (quotation omitted).

Here, the Court finds that Clements fails to make the required showing of irreparable harm. She is concerned, based on the two instances she describes, that defense counsel will inadvertently fail to redact her confidential information in future court filings. (*See* Doc. 52 at 17.) She argues that "court records are routinely crawled, mined, and scraped by bad actors for personal information, which is then sold at the expense of the most vulnerable litigants." (Doc. 52 at 6 (citations omitted).) Yet Defendants noticed their error and rectified it within hours, and they have taken added precautions to ensure that no unauthorized user has accessed or can access Clements's accounts. (*See* Doc. 56-2.) Given the measures Defendants have taken, the Court is not convinced that the incidents Clements complains of establish that any harm is imminent. On the contrary, the undersigned is inclined to believe, and so orders, that defense counsel will take care to avoid such

mistakes, if only to deter future similar motion practice.

Because Clements fails to show a likelihood of success on the merits or immediate irreparable harm, the balance of equities does not tip in her favor. Furthermore, Clements's request that Defendants be enjoined "to employ adequate confidentiality and data privacy protocols consistent with law and industry and government regulatory standards to protect [her] confidential information" (Doc. 52 at 2) is a disfavored injunction. "[G]enerally, injunctions simply requiring the defendant to obey the law are too vague." *Keyes v. Sch. Dist. No. 1, Denver, Colo.*, 895 F.2d 659, 668 (10th Cir. 1990) (citation omitted); *see also N.L.R.B. v. U.S. Postal Serv.*, 486 F.3d 683, 691 (10th Cir. 2007) (Tymkovich, J., concurring) (collecting cases). The Court will not issue an injunction that merely requires Defendants to obey Federal Rule of Civil Procedure 5.2 and other privacy laws. The Court finds that Defendants are aware of the applicable legal requirements and issuing an injunction is not warranted under the circumstances.

Nor does the relief Clements seeks serve the public interest. The Court declines to set any precedent that would encourage mandatory injunctive relief based on two minor incidents, neither of which appear to be purposeful or done with nefarious intent. Clements asserts that she "cannot continue this litigation until she is assured that Defendants have adequate measures in place to abide by the privacy policy and protect her confidential information and PII from further wrongful disclosures by their counsel." (Doc. 52 at 10 (emphasis and capitalization omitted).) Defendants have outlined measures they have already put in place to ensure that Clements's accounts have not been compromised, including further action (creating new account numbers) that Clements has not yet taken advantage of. (*See* Doc. 56 at 4–5.) If these measures are inadequate and Clements wishes to draw a line in the sand, she has another option: she may terminate this lawsuit and continue with arbitration, where there is little to no chance of public disclosure of her confidential information.

15

The Court denies Clements's motion for injunctive relief.

    **D.**    **The Court denies the motion for sanctions and disqualification.**

Clements seeks sanctions against defense counsel based on three incidents: (1) the pre-litigation correspondence emailed to Bradford Clements's law firm email address; (2) the inadvertent unredacted exhibits; and (3) the "accusation" that Bradford Clements is an "inactive attorney" made in the response brief to Clements's motion to compel. (*See* Doc. 53 at 2–10.) Clements highlights Defendants' attorneys' cumulative 65 years of experience. (*Id.* at 2–3.) She argues that she is entitled to sanctions under the Court's inherent authority and under 28 U.S.C. § 1927. (*Id.* at 11.)

Before turning to whether sanctions are warranted under either standard, the Court addresses Clements's accusation of bad faith and willful conduct. Clements "strongly asserts that bad faith and willful conduct are . . . present here" as evidenced by "Defendants' counsel's persistent pattern of conduct." (Doc. 53 at 20–22.) The Court disagrees. Defendants stated in Document 44 that the filing of the unredacted account numbers was inadvertent, and defense counsel "apologize[d] for the inadvertent filing" in an email to Clements's counsel. (*See* Docs. 44; 56-1 at 3.) Defendants filed the first redactions—which complied with Rule 5.2—the same day. They filed the second redactions—at Clements's request that went beyond the mandates of Rule 5.2—the next day.[3] They have also taken steps to make sure that Clements's accounts have not and will not be compromised by any bad actor who may have gathered the unredacted information on October 20, 2022. The Court finds no bad faith or willful conduct based on the failure to redact.

The Court find no bad faith in Defendants' characterization of Bradford Clements as "inactive," particularly since they voluntarily filed an Errata to correct the sentence in alignment

---

[3] Again, Clements asked for redactions beyond the last four digits due to the fact that she had disclosed the first four digits of the account numbers contrary to Rule 5.2(a) in the complaint. (*See* Docs. 53 at 6 (citing Doc. 1 at 4); 53-4.)

with Bradford Clements's arguments. (*See* Doc. 36; *see also* Doc. 34 at 3.) Was the description of Clements's attorney as "inactive" necessary? No. On the other hand, was it willful, sanctionable conduct? Again, no. Finally, Clements presents no evidence to show that Defendants' conduct in sending correspondence to Bradford Clements's law firm email address was done in bad faith or for purposes of harassment.

### 1.    The Court denies the request for sanctions under its inherent authority.

The Court has the inherent authority to "impose attorney-fee sanctions upon a party for bad-faith misconduct . . . ." *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1255 (10th Cir. 2015) (discussing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 53 (1991)). The Tenth Circuit has "stated that for 'the exceedingly narrow bad faith exception' to the American Rule" limiting the imposition of attorney's fees "to apply, 'there must be clear evidence that the challenged claim is entirely without color *and* has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons.'" *Kornfeld v. Kornfeld*, 393 F. App'x 575, 579 (10th Cir. 2010) (quoting *F.T.C. v. Kuykendall*, 466 F.3d 1149, 1152 (10th Cir. 2006)).

Clements asserts that "[c]ourts may and frequently do sanction an attorney for failing to comply with Rule 5.2." (Doc. 53 at 12.) She cites a handful of out-of-district cases in support. (*See id.* at 12–17.) For example, in *Reed v. AMCO Insurance Co.*, the United States District Court for the District of Nevada sanctioned the defendant for its repeated failure to comply with Rule 5.2. *See* No. 3:09-CV-0328-LRH-RAM, 2012 WL 846475, at *3 (D. Nev. Mar. 9, 2012). The court found that although the defendant did not engage in bad faith conduct, its failure to comply with the rules was sanctionable. *Id.* There, the defendant disclosed dates of birth and social security numbers for both the plaintiff and a non-party witness in a slew of exhibits to five separate briefs. *See id.*, Pl.'s Mot. for Sanctions for Violations of Fed. R. Civ. Proc. 5.2, at *4 (D. Nev. Sept. 23,

2011). Plaintiff's counsel contacted defendant on two occasions to ask that the confidential information be redacted, and defense counsel failed to respond or remedy the errors. *See id.* In *Weakley v. Redline Recovery Services, LLC*, defendant filed a document containing the plaintiff's full social security number and, despite notice from the plaintiff, left the error unremedied for over three weeks. *See* No. 09-CV-1423-BEN-WMC, 2011 WL 1522413, at *1–2 (S.D. Cal. Apr. 20, 2011). And in *Allstate Insurance Co. v. Linea Latina De Accidentes, Inc.*, the plaintiffs filed a complaint containing "birth dates, names of minors, financial account numbers, and at least one social security number." No. CIV. 09-3681 JNE JJK, 2010 WL 5014386, at *1 (D. Minn. Nov. 24, 2010). When defendants filed a motion to dismiss or strike and seal the complaint, several weeks went by with no response or action from the plaintiff. *See id.* The court found that "[p]laintiffs' response to [d]efendants' motion showed no sense of urgency or comprehension of what had been done" and ordered sanctions *Id.* at *1–3.

Defendants' conduct in this case is far less egregious than the conduct in the cases Clements cites in support of her motion. Defendants noticed their own mistake shortly after the exhibits were filed, took immediate action to correct the mistake, and made further redactions at Clements's request. They have also taken additional steps to ensure that Clements was not harmed by the mistaken disclosure of her financial account numbers. Defendants also assert that sanctions based on the pre-litigation email would be inappropriate. (Doc. 57 at 11–12.) The Court agrees that the Tenth Circuit has "refuse[d] to approve fee shifting under the bad-faith exception where the wrongful conduct consists solely of prelitigation bad-faith acts." *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 769 (10th Cir. 1997). Further, Clements fails to show any prejudice resulting from Defendants' conduct. *See Martinez v. Gonzales*, No. CV 13-0922 RHS/WPL, 2014 WL 12650987, at *2 (D.N.M. May 7, 2014) (declining to award sanctions because defendants shortly remedied

the allegation that they failed to redact information and because the plaintiffs failed to show any prejudice from the failure). In sum, the Court declines to impose sanctions pursuant to its inherent authority on the basis that Defendants violated Rule 5.2.

### 2. The Court denies the motion for sanctions under 28 U.S.C. § 1927.

"28 U.S.C. § 1927 provides that '[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Paschall v. Frietz*, 461 F. Supp. 3d 1145, 1151 (D.N.M. 2020). "Sanctions are appropriate when an attorney acts recklessly or with indifference to the law; is cavalier or bent on misleading the court; intentionally acts without a plausible basis; or when the entire course of the proceedings is unwarranted." *Id.* (citing *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1221 (10th Cir. 2006)). "The Court also has the inherent right to manage its own proceedings" and "authority under its own inherent powers to deter frivolous and abusive litigation and promote justice and judicial efficiency by imposing monetary sanctions." *Id.* at 1152. (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–67 (1980); *Link v. Wabash R. Co.*, 370 U.S. 626, 632 (1962) (recognizing the well-acknowledged inherent power of a court to levy sanctions in response to abusive litigation practices)). Section 1927 "does not require a finding of bad faith" but rather requires a showing of "objectively unreasonable conduct . . . that multiplied proceedings." *Snyder v . Acord Corp.*, 811 F. App'x 447, 466 (10th Cir. 2020) (quotations omitted).

Clements argues that the conduct discussed herein, perpetrated by experienced attorneys, was objectively unreasonable and constitutes a "pattern of harassing and dilatory conduct that has unreasonably and vexatiously multiplied the proceedings." (Doc. 53 at 21.) The Court disagrees. Defendants took timely steps to remedy both their characterization of Bradford Clements as

inactive and their failure to redact sensitive information. It has been Clements herself who has multiplied these proceedings by inundating the Court with motions—to strike, for sanctions, to disqualify, for injunctive relief—in response. The Court disagrees that defense counsel's conduct was objectively unreasonable and will deny the motion for sanctions under § 1927.

### 3. The Court denies the motion to disqualify defense counsel.

Finally, Clements asserts that defense attorneys Potter and Gooch have violated several rules and should be disqualified. (Doc. 53 at 24–31.) "This Court has discretion to disqualify an attorney who has committed an ethical violation." *Rubio v. BNSF Ry. Co.,* 548 F. Supp. 2d 1220, 1222 (D.N.M. 2008) (citing *Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1383 (10th Cir. 1994)) (subsequent citations omitted). Clements bears the initial burden to show that disqualification is warranted. *See id.* In examining the motion, the Court applies "the Rules of Professional Conduct adopted by the Supreme Court of the State of New Mexico, except as modified by Local Rule or Court Order." *Alvarado-Escobedo v. United States*, No. 16-CV-1235-F, 2018 WL 10733605, at *2 (D.N.M. May 8, 2018) (discussing *Cole*, 43 F.3d at 1383) (citing D.N.M. LR-83.9).

Clements asserts that by failing to redact the exhibits on October 20, 2022, defense counsel violated New Mexico Rules of Professional Conduct 16-304(C) and 16-404(A). (*Id.* at 25–27.) Rule 16-304(C) prohibits attorneys from "knowingly disobey[ing] an obligation under the rules of a tribunal . . . ." Rule 16-404(A) provides that "[i]n representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person." Defendants' and their attorneys' conduct in this matter—their quick efforts to comply with Rule 5.2 and their responsiveness to Clements's demands for further redactions and additional steps to protect her information—are sufficient to assure the Court that their conduct was accidental. Clements has not

shown that Defendants knowingly disobeyed the rules or acted in an effort to embarrass, delay, or harass Clements.

Clements accuses defense counsel of violating New Mexico Rule of Professional Conduct 16-303(A)(1), which prohibits attorneys from making false statements to a tribunal, when they characterized Bradford Clements as inactive. (Doc. 53 at 27.) In light of Bradford Clements's admission that he is "non-practicing" and Defendants' errata filed to reflect this fact, the Court declines to find a violation of the rule.

Finally, Clements asserts that defense counsel will soon violate New Mexico Rule of Professional Conduct 16-307(A) if they continue to represent Defendants. (Doc. 53 at 27.) Rule 16-307(A) states:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.

Clements states that because she will amend her complaint to include a breach of contract claim based on the pre-litigation email and the inadvertent filing of unredacted exhibits, defense counsel Potter and Gooch will be necessary witnesses. The Court declines to disqualify counsel on this basis, as Clements's claim is merely hypothetical at this point. In short, the Court denies the motion to disqualify.

## IV.   Conclusion

Clements's recent motion practice has strained the undersigned's patience. The Court directs counsel for both parties to act with decorum and respect and to work expeditiously to move the real issue in this lawsuit—the enforceability of the parties' arbitration agreement—toward

resolution.

**THEREFORE,**

**IT IS ORDERED** that the Expedited Motion to Compel Defendants to Provide Opt-Out Period Custodian Account Agreement, Terms of Service, and Form 5305-A, Motion for Clarification, and Motion to Extend [Her] Deadline to Refile Complaint (Doc. 31) is **DENIED in part** in that the Court denies the request for discovery and **GRANTED in part** in that the Court clarifies its earlier statement as described in this Opinion. Clements shall file her Third Amended Complaint within **21 days** of this Opinion.

**IT IS FURTHER ORDERED** that the Objections to United States Magistrate Judge Steven Yarbrough's October 14, 2022 Order Denying Motion to Strike (Doc. 50) are **OVERRULED**.

**IT IS FURTHER ORDERED** that the Motion to Withdraw Motion for Attorney Fees (Doc. 51) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Application for Temporary Restraining Order and Preliminary Injunction (Doc. 52) is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion for Sanctions and Motion to Disqualify Counsel (Doc. 53) is **DENIED**.

**IT IS FURTHER ORDERED** that the Consent Motion for Extension of Thanksgiving Weekend Filings (Doc. 55) is **DENIED in part**, in that the Court will not allow Clements to file a reply brief regarding her Objections,[4] and **DENIED AS MOOT in part**, in that Defendants have

---

[4] Replies in support of objections to a magistrate judge's report are not contemplated by Federal Rule 72(a). *Heuser v. Wood*, No. 99-884 JP/LFG, 2000 WL 36739825, at *7 (D.N.M. June 6, 2000). Regardless, the Court does not require a reply in order to rule on the objections or, for that matter, on the motions for sanctions or injunctive relief.

Similarly, the Court issues its ruling on Clements's motion for injunctive relief prior to receiving her reply brief. The Court does so both because the issues are clear from the briefs already submitted and because the Court is mindful that the motion for TRO necessitates expedient relief.

already filed a response brief (*see* Doc. 57).

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE